[Civil No. 191. Filed September 26, 1887.]

[S. C. 15 Pac. 28.]

## JOHN O'DOHERTY, Plaintiff and Appellant, v. LOUISA M. TOOLE, Defendant and Respondent.

1. FRAUDULENT CONVEYANCES—FROM HUSBAND TO WIFE—CREDITORS MAY SUBJECT PROPERTY IN WIFE'S HANDS TO CLAIMS.—A conveyance of real estate by a husband to wife, in consideration of love and affection, is fraudulent as to creditors where the deed is unrecorded and the property is openly dealt with by the husband as his own, is assessed to him and he has paid the taxes thereon, and creditors may pursue such property into the wife's hands.

2. LIMITATION OF ACTIONS—CLAIMS AGAINST ESTATES—COMP. LAWS ARIZ. 1877, p. 274, par. 1647, CONSTRUED—CONSTRUCTION OF STATUTES OF LIMITATIONS.—Failure to present a judgment claim against a decedent within the ten months allowed by the statute, *supra,* forever bars it as a claim against the estate proper. In the construction of statutes of limitation appertaining to various subjects reference should always be had to the object designed to be accomplished in fixing each period of limitation. It does not bar an action to subject property to judgment which was and is a specific lien upon property fraudulently conveyed by decedent to his wife, such conveyance being good as between the parties and divesting the estate of title.

3. FRAUDULENT CONVEYANCES—EXECUTORS AND ADMINISTRATORS—NOT
   NECESSARY PARTY TO SUIT TO SUBJECT PROPERTY FRAUDULENTLY
   CONVEYED BY INTESTATE—COMP. LAWS ARIZ. 1877, p. 290, par.
   1719-1720, CONSTRUED.—An executor is not a necessary party to a
   suit to subject property, fraudulently conveyed by his testator,
   to the payment of a debt of a judgment creditor. Statute, *supra*,
   construed.

BARNES, J., concurring specially, construes Comp. Laws Ariz. 1877, p.
   274, par. 1647.

APPEAL from a Judgment of the County Court in and
for the County of Pima. Reversed.

The facts are stated in the opinion.

J. A. Anderson, for Appellant.

Hereford and Lovell, for Respondent.

Appellant brought this action for the purpose of setting
aside the deed of James H. Toole to respondent, upon the
ground that said deed was fraudulent, and to subject the
property conveyed to the satisfaction of his judgment against
the firm of Hudson & Co., of which James H. Toole was a
member. The court below did not find as a *fact* any fraud-
ulent intent on the part of Toole in making the deed of
gift, and it is not pretended that there was any fraud on the
part of the respondent. Fraudulent intent is a question of
fact, and not of law. Sec. 23, Chap. 37, Com. Laws of
Arizona. Fraud must have been *intended* at the time of
the conveyance. *Mattingly* v. *Nye*, 8 Wall. 370. Neither
fraud or fraudulent intent was found as a fact by the court.
It is the intent which renders a conveyance void for fraud
as against creditors. Bump on Fraudulent Conveyances, 3rd.
Ed. p. 269.

The general rule is that a conveyance by a husband sol-
vent at the time to his wife, will be supported, if he retain
ample property to pay his debts, and the gift or convey-
ance was a reasonable one. Wait on Fraudulent Convey-
ances, par. 99, p. 308, and par. 208, p. 292; *Wallace* v. *Pen-*

*field,* 106 U. S. 260, 1 Sup. Ct. Rep. 216; *Graham* v. *R. R. Co.,* 102 U. S. 148.

In the absence of evidence that the husband was indebted at the time there is no presumption of invalidity. *Kane* v. *Desmond,* 63 Cal. 464; *Hussey* v. *Castle,* 41 Cal. 239. Subsequent creditors cannot question the conveyance. Wait on Fraud. Con. par. 208, p. 292. *Graham* v. *R. R. Co., supra.* Fraud must have been intended at the time. *Mattingly* v. *Nye, supra; Dunlap* v. *Hawkins,* 59 N. Y. 342, James H. Toole was worth from $50,000 to $75,000 in his own right, about $32,000 of which was in real estate in Pima County, Arizona, and he owed little or nothing at the time he made the gift to his wife. Under the laws of this territory the respondent in case of the death of Mr. Toole, would have inherited no part of his property. Sec. 1, Chap. 26, Comp. Laws. The gift was therefore a reasonable one. *Baker* v. *Koneman,* 13 Cal. 9.

The case of *Bittinger* v. *Kasten* was decided by the Supreme Court of Illinois in Sept., 1885, and reported in 19 Reporter 299. We call the attention of the Court specially to this case, and the authorities there cited.

Some point was made in the court below, upon the fact that the deed from Mr. Toole to his wife was not recorded until after the assignment to Stiles. But the appellant does not claim under the Assignee. The common law in force when this deed was made. Sec. 7, Chap. 61, Comp. Laws of Ariz. Nor was there any law in this territory requiring the deed to be recorded. Sec. 26, Chap. 42, Comp. Laws. is to the effect that if the deed is not recorded, "it shall be void as against any subsequent purhaser, in good faith and for a valuable consideration." No other penalty attached. "Judgment creditors are not "purchasers" within the meaning of the recording acts and unless put upon the same footing they do not obtain a benefit which a subsequent purchaser does by a prior record." 2 Pomeroy Equity Jurisprudence, par. 721, p. 177. An unrecorded deed is good as against a subsequent attaching creditor. "The Register Act does not make an unrecorded deed void as against subsequent attaching creditors." *Wilcoxon* et al. v. *Miller* et al., 45 Cal. 193. *Schroeder* v. *Guernsey,* 73 N. Y. 430.

The appellant neglected to present his judgment to the executor of Toole, for allowance. The court below held he was barred by reason of such failure. Secs. 202 and 203, Chap. 29, Comp. Laws.

Counsel for appellant contends that these sections, giving the executor or administrator the right of action to recover property fraudulently conveyed by a decedent, for the benefit of creditors, is merely cumulative, and concurrent with the right of the judgment creditor to maintain the action, and cites Wait on Fraud. Con. Sec. 112, p. 175, and Sec. 113, p. 127. We contend that these citations show that the contrary is the rule.

It rested with the plaintiff to show fraud and fraudulent intent. Wait on Fraud. Conv., par. 273. A mere suspicion of fraud is not sufficient to defeat a conveyance. Idem. par. 383.

Appellant neglected to present his judgment to the executor and have it allowed as a claim against the estate of Toole, and to request the executor to institute a suit to recover the property alleged to have been fraudulently conveyed; his judgment is therefore barred forever, and 'he cannot therefore maintain this suit against the respondent. Sec. 202, chap. 29, Comp. Laws; *Board of Pub. Works,* v. *Columbia College,* 17 Wall. 521; *Hill* v. *Sherwood,* 48 Cal. 386; *Bate* v. *Graham* et al., 11 N. Y. 237.

WRIGHT, C. J.—The main questions raised by the record in this case are: (1) Had the appellant and creditor, under the general law, the right to pursue the property fraudulently conveyed by the debtor, in the hands of the vendee, without joining the executor of the deceased debtor? (2) If so, has the law of this territory contravened that right, or by it is the debt barred and the right lost, because the claim was not presented for allowance in the probate court within the 10 months allowed by said law?

John O'Doherty, the appellant and creditor, had recovered judgment against James H. Toole, the husband of respondent, Louisa M. Toole, and one Hudson, during the life-time of said Toole, in the district court of Pima county, for about $3,800. The exact date of the judgment was May 29, 1884; the appel-

lant having been a creditor of the said Toole some months prior to the date of the judgment. On the first day of November, 1882, Toole executed a deed to the respondent, his wife, whereby he deeded to her certain premises in the city of Tucson, worth at the time probably $15,000. This was a voluntary conveyance, made in consideration of one dollar and love and affection; and the judge below, in his first conclusion of law, finds that the deed was fraudulent and void as to appellant, but that it vested a good title in respondent, as to said Toole, his heirs, devisees, and assigns; and, in his second conclusion of law, he finds that respondent was and is estopped from denying that said deed was and is void as to the creditors of the said Toole.

These findings or conclusions of law were undoubtedly correct. The evidence showed that, after Toole had executed this deed to his wife, the respondent, she and he suffered it to lie in a drawer, along with other papers of his, for nearly two years; that it was not recorded until two months after the assignment, in May, 1884; that during all that time the public, including appellant, had no intimation whatever that the property had been deeded by Toole to his wife; that, on the contrary, Toole gave the property in to the assessor as his, during the years 1883 and 1884, and paid the taxes thereon during those years; that he continued to act towards the property in every respect as though it was his, thereby in a measure superinducing the deposits, by appellant and others, in the bank of Hudson & Co., and the consequent loss of their money. In a word, here was a case of actual fraud, and the court below so found. Now, the appellant was a judgment creditor of the said Toole; and his judgment having been regularly docketed, was and is a lien upon the property so conveyed by Toole to his wife, the respondent here; and while said property, by virtue of said conveyance, ceased to be a part of Toole's estate, the deed being good between the parties thereto, it was and still is subject to the lien of appellant's judgment. While, as the learned judge below observed, it was fraudulent and void as to creditors, it was good as to Toole and his heirs and assigns. Appellant's judgment, it was true, was a valid and subsisting claim also against the said Toole's estate; and, until the expiration of the 10 months

allowed by statute for presenting claims, it might have been presented and allowed against said estate; but, because it was not thus presented and allowed, and is therefore forever barred as a claim against said estate, has the appellant lost his remedy against the property so fraudulently conveyed to respondent as aforesaid? Clearly not, we think. Indeed, we believe no' doctrine of equity is more generally and explicitly settled in this country by general law than that creditors may pursue property fraudulently conveyed into the hands of the vendee. This doctrine has come down from the old statute of 13 Eliz. An examination of the cases will show that the law has been settled, almost uniformly, in accordance with the spirit of that statute in all the states; and, while confined largely to the domain of chancery courts, its principles have generally obtained in courts of law; the main difference being that in the latter fraud must be proved, while in the former it is often presumed; in the one the chancellor stands upon the broad plains of conscience; in the other the judge may not go beyond certain stern and inflexible rules. It is the province of a court of conscience to tolerate no unclean thing. Honesty and fair dealing are the vitalizing currents of its healthy existence. He who would have others be honest, must be careful that he himself is not dishonest. Here no man is to be allowed to profit by his own wrong. He cannot rightfully ask that others keep their houses in order till he has dusted his own floors. As was said by Judge Bliss of the supreme court of Missouri, in *McLaran* v. *Mead,* 48 Mo. 115: ''The husband will not be permitted to hold property in the name of his wife, or withdraw it from the reach of his creditors, and *give* it to her, so as to shield it from execution.'' In that case reference is made to the strong case of *Gault* v. *Saffin,* 44 Pa. St. 307, where Judge Read holds that a husband cannot fraudulently cover up his property through the agency of his wife; but that the same, when thus covered up, may be discovered by the credi-tors of the husband. To pursue property fraudulently conveyed by a testator in his life-time, it is not necessary to have the deed first set aside. The judgment creditor may go into a court of equity, and have a decree ordering the sale of the property to' satisfy his debt. And where there is a

voluntary conveyance by a husband to his wife of real estate, and such conveyance is not recorded, although the husband is insolvent; and the husband continues to act towards the property as though it were still his own, and thereby deceives his creditors to their injury,—a court of equity will set aside said conveyance as void, or grant other proper relief, at the instance of the creditors. See *Fellows* v. *Smith*, 40 Mich. 689; *Lee* v. *Figg*, 37 Cal. 328, 99 Am. Dec. 271; *Lander* v. *Beers*, 48 Cal. 546; *Robinson's Ex'r* v. *Robards*, 15 Mo. 459; *King* v. *Moon*, 42 Mo. 551.

Thus far, then, the court below was right in its findings that said deed from Toole to his wife was fraudulent and void as to the former's creditors, and that the latter was estopped from denying that such was the case. We entertain no doubt, however, that the court was in error in deciding that the judgment creditor, the appellant here, having failed to present his judgment as a claim against Toole's estate in the probate court of Pima county, within the 10 months allowed by the statutes of the territory, could not maintain this action because his claim was thereby forever barred as a claim against said estate. The *nisi prius* judge had already found as a fact, as alleged in the complaint, that the estate of Toole was wholly insolvent. No beneficial purpose, therefore, would have been subserved by presenting appellant's judgment claim against it; the real estate conveyed by Toole to his wife, as we have already observed, having ceased to be a part of his estate. We repeat, it is true that the appellant, having failed to present his judgment claim against Toole's estate within the 10 months allowed by statute, *it became thereby forever barred as a claim against said estate;* that is, the appellant lost his remedy to collect his debt against the estate proper. In construing statutes of limitation appertaining to various subjects, and found in different parts of the general body of laws, reference should always be had to the object designed to be accomplished in fixing each period of limitation. This period of limitation for presenting claims against an estate is brief,—purposely made so by the legislature. The object of administration is to pay off the debts and wind up the estate of the deceased, that the heir may not be long delayed in coming to his inheritance.

But would it not be unreasonable, and even unjust, to infer that, because forsooth the law-making department of the government had provided for the speedy transmission of estates from ancestors to descendants, it thereby became, in effect, the coadjutor of fraud, by contravening the well-established rules of equity, and by enabling a fraudulent dead man, through his representatives, to do what a dishonest live one could not do?

Clearly so; unless, possibly, the estate would suffer injury or the heirs incur loss, neither of which events could happen; for we have seen that the conveyance, though fraudulent, was good between the parties, and the property, by virtue thereof, ceased to be a part of Toole's estate; and his heirs, devisees, and assigns, being privy with him, are bound by his conveyance. Toole, if living, could not question the lien of appellant's judgment upon the property which he had fraudulently conveyed. Ought his representatives to be allowed to do so? True, as we say, by his fraudulent deed, Toole and his legal representatives were and are absolutely concluded, and the property it conveyed has become foreign to his estate; but it is also equally as true that appellant's judgment was and is a specific lien upon that property in the hands of respondent. Hence it is difficult to see how the court below arrived at the conclusion that, because appellant had failed to present his judgment claim against Toole's estate within the statutory period, this action which seeks to subject that property to the payment of his debt could not be maintained.

The learned counsel for the respondent contends that the court below did not find, as a *fact,* that the deed from Toole to his wife was made with *intent* to defraud creditors. The record does not bear out this claim. In the seventh finding of fact by the court below this language is used: "Said deed was made to provide against the hazards and contingencies of the banking business, and *for the purpose of hindering* and *delaying* the creditors of Hudson & Co." Toole himself was the "Co." We are entirely satisfied that the conduct of Toole and his grantee, the respondent here, contemporaneously with and after the execution of this deed, was such as fully warranted the judge below in finding *actual* fraud;

such as rendered it null and void both as to existing and subsequent creditors.

Counsel relies upon the late case of *Bittinger* v. *Kasten,* (Ill.) 19· Reporter, 299. But that is by no means a parallel case. There the complaint did not allege insolvency on the part of Kasten, nor that he was indebted, beyond the plaintiff's claim, at the time of making the deed to his wife; neither did the court find that his subsequent conduct was fraudulent, nor that the conveyance was made to provide against any financial hazard, or was not recorded; but it was admitted that the property was conveyed by the defendant to his wife as a reasonable provision for her. The court below and the appellate court seemed to have been satisfied of the good faith of the parties, and that the defendant, by having the property deeded to his wife, did not *intend* to delay or defraud his creditors. In other words, there was no *actual fraud.*

But the learned counsel for respondent contends that the executor of Toole's estate should have been requested and that he was the proper party to have brought the suit to have the fraudulent deed of his testator set aside, and the property revested in the estate as assets. Comp. Laws 1877, c. 29, §§ 202, 203, do give the executor or administrator the *right,* when the assets are not sufficient to pay the debts of the estate, to bring suit to set aside a fraudulent conveyance of the testator or intestate; and this for the sole purpose of paying the creditors' claims; but it does not say, and it surely does not mean, that the executor or administrator is the *only* party that has that right. Instead of being restrictive, was not this statute designed to aid the creditor, by conferring upon the executor or administrator of the fraudulent grantor the right to bring suit to set aside the fraudulent deed of such grantor, that the property thereby conveyed might be subjected to the payment of the creditor's debt? And does it not apply more particularly to *general creditors,* rather than to those creditors having *specific liens?* Did the conferring of a cumulative legal remedy, without words of divestiture, ever take· away an equitable right? Because the statute says the executor *may,* does it mean that the judgment cred-

itor himself shall not pursue the property fraudulently conveyed?

The territorial law confers this additional statutory right; but it does not take away the well-established equitable remedy. The legislature simply made that statutory which was already within the clearly defined rules of equity; but it certainly did not mean that, to that extent, there should be no equitable remedy in the creditor. The utmost construction of which we think this statute would admit would be that the remedy is cumulative and concurrent with that of the general creditor. The administrator, in those states where the right is by statute conferred upon him, is certainly not a *necessary* party to a suit to subject property, fraudulently conveyed by his intestate, to the payment of the debt of a judgment creditor. See *Merry* v. *Fremon*, 44 Mo. 518; *Zoll* v. *Soper*, 75 Mo. 460; *Hagan* v. *Walker*, 20 Curt. Dec. 17; *Morris* v. *Morris*, 5 Mich. 180; *Hills* v. *Sherwood*, 48 Cal. 393. The horn-books clearly support this view. Mr. Wait, in his admirable work on Fraudulent Conveyances, at page 177, § 113, uses this language: "The legislation, clothing personal representatives with the power to appeal to the court to annul covenous alienations made by the deceased, is highly salutary in practice. The *concurrent* right of the creditor to seek redress is also of the utmost importance; for the personal representative is usually selected by, or is a near relative of, the deceased, and may in some cases be prompted by motives of friendship or self-interest to shield the parties who have depleted the estate, and in some instances is himself the fraudulent alienee." See, also, page 175, § 112. Also, Bump. Fraud. Conv. (3d Ed.) 548.

It is ordered that the judgment of the county court be reversed, and the cause remanded to the district court of Pima county, with directions to enter up judgment in favor of appellant, and against respondent, declaring said deed by James H. Toole to his wife, the respondent here, fraudulent and void as to creditors, including appellant, and ordering the property conveyed by said deed to be sold by the sheriff of said county, and the proceeds, after payment of costs of sale, devoted to the payment of appellant's debt; and for interest and costs of both suits. If there should be a

surplus remaining over, it should be paid over to Mrs. Toole, the respondent; who will hold it, however, subject to the claims of other creditors of her husband, James H. Toole, should there be any.

BARNES, J.—By the probate act it is provided that, "if a claim be not presented within 10 months after the first publication of the notice, it shall be forever barred." Comp. Laws, 1647. This provision is borrowed from the statutes of California, where it has received judicial construction. In *Fallon* v. *Butler*, 21 Cal. 24, 81 Am. Dec. 140, it was held that a mortgage upon real estate may be foreclosed by action against the administrator, although the debt has not been presented as a claim against the estate and allowed, where the only object is to reach the property mortgaged, and no judgment is asked against the estate. In that case the court holds that the term "claims" in the probate court act "only has reference to such debts or demands as might have been enforced against him [intestate] by personal action for the recovery of money, and upon which only a money judgment could have been rendered." "In this sense a mortgage lien is not a claim against the estate." This case is approved in *Pechaud* v. *Rinquet*, 21 Cal. 76; *Willis* v. *Farley*, 24 Cal. 498; *Orr's Estate*, 29 Cal. 104, and *Brown* v. *Orr*, 29 Cal. 122. However, in *Ellis* v. *Polhemus*, 27 Cal. 350, the court held the word "claim" to be broad enough to embrace a mortgage or any other lien. In *Christy* v. *Dana*, 34 Cal. 553, foreclosure was sought against property conveyed by decedent in his life-time. The court held that it was not barred because not presented against estate of decedent, "as intestate at the time of his death had no interest in the land." In *Sichel* v. *Carrillo*, 42 Cal. 505, mortgage by a wife on her separate property, to secure note of the husband, was sought to be foreclosed, and it was held not to be barred by failure to present claim against the estate of husband. In *Schadt* v. *Heppe*, 45 Cal. 433, foreclosure was sought against property set apart to widow as a homestead. The claim was not presented, and it was held not to be barred, as "the estate has no interest whatever in the property mortgaged." In *Pittee* v. *Shipley*, 46 Cal. 154, the question arose squarely,

and the court held that a mortgage upon property which becomes general assets of the estate is barred if the claim is not presented within 10 months. In the case at bar a judgment had ripened into a lien in the life-time of intestate. After his death the widow asserted title under an unrecorded deed, which is held to be fraudulent as against creditors. This deed is binding upon intestate and his heirs, but is voidable as to creditors. The property is not a general asset of the estate; hence the cases above cited (*Christy* v. *Dana, Sichel* v. *Carrillo,* and *Schadt* v. *Heppe*) must govern. This suit to enforce that judgment lien, and no more, and as the mortgage is sought to be foreclosed against the estate, may be maintained. For these reasons I concur in the decision of this case.

PORTER, J.—I concur in the judgment of affirmance.